## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. Hotel and Resort Management, Inc. and Regency Hotel Management, LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Onity Inc.,<br><br>Defendant. | Court File No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs U.S. Hotel and Resort Management, Inc. ("U.S. Hotel") and Regency Hotel Management, LLC ("RHM") (collectively "Plaintiffs") on behalf of themselves and all others similarly situated, by and through their attorneys, Zimmerman Reed, PLLP, for this Class Action Complaint against Onity Inc. ("Onity"), state upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, as follows:

### INTRODUCTION

1.      Plaintiffs bring this class action, on behalf of themselves and all others similarly situated to obtain from Defendant damages, restitution, and injunctive relief for themselves and the Class, as defined herein.

2.      Onity is the manufacturer of electronic door locks used primarily in hotels, motels, and other lodging businesses.  The primary purpose of these locks is to secure lodging rooms and protect the occupants and their possessions.  In a lodging contract,

1

securing the occupant and contents of a room is of utmost importance.  However, the Onity Locks at issue here are inherently defective (as designed and manufactured) and fail to perform as promised, leaving Plaintiffs and the Class, and their lodging guests, at risk.

3.     Defendant warranted and promoted its electronic lock products ("Onity Locks") as the "most advanced" in the industry and "reliable to fit [client's] needs." Defendant also warranted that the Onity Locks possessed the "most reliable technology" available in the industry today.  Additionally, Onity Locks had an implied warranty of being fit for the ordinary purpose of locking doors and preventing unauthorized entries into lodging rooms.  However, Onity Locks are defective and not fit for their ordinary purpose.  The Onity Locks were defective and, as a result, experts in the industry have described the process of hacking them and gaining access to guestrooms containing the Onity Locks as, "stupidly simple."  As has been demonstrated repeatedly, including for public view across the Internet, the Onity Locks can be easily opened with a homemade hacking device, created with readily available, store-bought parts, rendering the locks worthless.

4.     Moreover, Defendant expressly warranted that it would "fix" or "replace with a new one" any Lock that failed for "any reason."  In reality and in response to learning of its defective products, Defendant has merely offered to provide its purchasers one of two completely unsatisfactory options.  One choice for an affected purchaser is to purchase a temporary "mechanical cap" from Onity that is neither practical nor capable of solving the fundamental design flaw.  This "cap" does not fix the defect and creates

further problems by blocking emergency access to a lodging room where the cap is employed. A wronged purchaser can also choose to replace and upgrade the lock at its own expense. In either case, these proposed options do not "fix" anything because either the Onity Locks remain defective or the purchaser assumes Onity's financial responsibility for providing a good lock.

5. As alleged more fully herein, Defendant has breached its express and implied warranties, violated the Magnuson-Moss Warranty Act, and has been unjustly enriched through its sales of these defective locks.

6. Plaintiffs and the Class seek damages, restitution, injunctive relief, equitable relief, costs and expenses of litigation including attorneys' fees, and all further relief available at law and equity.

## PARTIES

7. Plaintiff U.S. Hotel and Resort Management, Inc. is a South Dakota corporation located at 3211 West Sencore Drive, Sioux Falls, South Dakota. U.S. Hotel owns and operates numerous hotels around the country, including in the State of Minnesota. To ensure the safety and security of its lodging guests, U.S. Hotel purchased and installed thousands of Onity Locks for installation in its lodging properties in Minnesota, North Dakota, South Dakota, Iowa, Nebraska, Colorado, Kansas, Illinois, Michigan, New Mexico, and Wyoming. Most or all of these locks were at all times defective due to their ability to be easily picked as described herein.

8. Plaintiff Regency Hotel Management, LLC is a South Dakota entity located at 3211 West Sencore Drive, Sioux Falls, South Dakota. RHM is a hotel management

3

company and is the agent for U.S. Hotel and other owners of lodging properties.  RHM contracted with Defendant to purchase and install thousands of Onity Locks in numerous hotel properties in Minnesota, North Dakota, South Dakota, Iowa, Nebraska, Colorado, Kansas, Illinois, Michigan, New Mexico, and Wyoming.  Most or all of these locks were at all times defective due to their ability to be easily picked as described herein.

9.    Defendant Onity is incorporated in the state of Delaware and has its principal place of business at 2232 Northmont Parkway Suite 100, Duluth, Georgia, 30096.  Onity has R&D and manufacturing operations in Spain, Mexico, China, and the U.S., as well as an extensive sales and service network that spans more than 115 countries around the globe.

10.    At all times relevant hereto, Onity was in the business of designing, manufacturing, promoting, marketing, advertising, distributing and selling Onity Locks and other products throughout the United States, including in the State of Minnesota.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act ("CAFA"). Jurisdiction is proper because (a) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (b) there is diversity of citizenship between Plaintiffs and Defendant.

12.    Venue is proper in this District under 28 U.S.C. § 1391(a) because Plaintiffs own, operate, and/or manage hotels residing within it that are the subject of this

4

litigation, Plaintiffs conducted relevant transactions with Defendant within it, and because Defendant has caused harm to the Class Members residing in this District.

## FACTUAL ALLEGATIONS

13.     Defendant Onity (formerly TESA Security Systems) was founded in 1941 as a lock manufacturer.

14.     Onity represents that it has "set the standard" for locking devices with installations of more than 3.7 million locks worldwide since 1984.

15.     Onity represents that it provides the finest quality in its products. Onity proclaims on its website: "Our products meet International standards, and are designed and built to uncompromising quality approval.  From research and development to after-the-sale support, we cover all the stages of providing electronic solutions, to guarantee the finest quality in all our products and services."

16.     Included in the locks defectively designed and sold by Defendant are those produced under the names HT 28 Smart Lock, HT24 Lock, HT RFID, Advanced RFID, Advanced Lock, CodePro, Integra 5 Locking System, and Onity Wireless Lock.

17.     Onity represents itself as the world's leader in the electronic lock industry providing the most advanced and reliable technology in the field.  For example, on its website, Onity states that it is "the world's leading provider of electronic locks."  Onity also states on its website that it "combines innovative technology and dependable service" to provide "the most advanced locking solutions in the industry today." and that it provides "game-changing products and superior technology."

5

18.    In its product brochure, Onity states that its electronic locking products have "the most reliable technology" and the company provides "the most advanced electronic locking systems in the industry today."

19.    Onity purports to guarantee repair or replacement of all of its product parts for any reason.

20.    In the "Our Service Commitment" section on its website, Onity states: "No one does this better than Onity! If any Onity product fails to work for any reason, send it to us. We'll either fix the problem or replace it with a new one."   There is no time limitation on this statement.

21.    In its product brochure, Onity makes a similar statement. It states: "Onity provides solutions tailor made to each Hotel's individual needs, including: Guaranteed replacement and repair of system components."

22.    Despite these express representations of being the "most advanced" and the "most reliable" product in the industry today, Onity Locks lack even basic security features and can be opened easily by unauthorized persons due to their defective design.

23.    Onity Lock systems are comprised of three main parts.  An "encoder" is a device which makes the keycards to be used by the guests.  A "portable programmer" is a device which programs the locks with guest code key values, time tables and other guest information.  And the "lock" is the actual lock installed on every door.

24.    The portable programmer uses a small DC-barrel power docket located on the bottom of the Lock to communicate with the Lock.  This docket is easily accessible without physically removing any hardware on the lock.  Communications with the Lock

take place over a bi-directional single-wire protocol by inserting the portable programmer into the docket.  Once inserted, the portable programmer and the lock communicate by sending pulses at regular intervals.

25.    Every Lock's memory contains data that is used to communicate with the portable Programmer, including the hotel's sitecode.  A sitecode is a 32-bit unique value that identifies and gives access to the hotel room.

26.    Onity Locks requires *no* authentication for reading memory.  Thus, any device that emulates the same pulses as a portable programmer can direct the Lock to send data contained in its memory.

27.    Normally, one can alleviate the problem of a lock's memory being readily accessible if the exact location of the sitecode in the memory is found.  However, each Onity Lock has its sitecode data at the same address, which allows hackers to uncover the sitecode easily once they read memory from the lock.

28.    Once a hacker easily determines a particular lock's sitecode, the hacker can quickly open a guestroom door by playing this sitecode back to the lock.

29.    On July 24, 2012, Cody Brocious, a hacker and software engineer for Mozilla, revealed the Onity Locks' security flaw described herein at the Black Hat security conference.  There, Mr. Brocious demonstrated a hardware hack that allows a simple homemade device, created with readily available and store-bought parts, to read the sitecode out of the Lock's memory and open the Lock.

30.    A homemade device needs about 200 milliseconds to read an Onity Lock's memory and open a guestroom door.  According to Mr. Brocious, the methods used to

7

breach the security of Onity Locks were "stupidly simple" and "an intern at the NSA could find this in five minutes."

31.    Following his demonstration at the Black Hat conference, Mr. Brocious posted on his internet blog the detailed schematics for the hacking device.   Since then, other hackers have been able to replicate and refine the device, and have posted videos on You Tube explaining the method in detail.   Current improvements allow the hacking device to be disguised as a dry erase marker, iPhone cover, or an aluminum wallet, which makes it almost undetectable for most hotels and their security.

32.    Shortly after Mr. Brocious's public demonstration, Onity told the BBC in a statement that "Onity places the highest priority on the safety and security provided by its products and works everyday to develop and supply the latest security technologies to the marketplace," and that "Onity is prepared to address any potential issues posed by the presentation."   Onity also posted a statement on its website stating that the demonstrated hacking method is "unreliable" and "complex to implement."   This posting has been removed and replaced with just contact information for its customers.

33.    *Forbes* first reported Mr. Brocious's hacking method on July 23, 2012, the day before the Black Hat conference was held.   Shortly thereafter, the story was picked up by other news outlets including CBS, BBC, MSNBC and spread rapidly across the news wires and the internet.

34.    ABC News tested the security breach on television.   On October 22, 2012, a reporter from ABC news and an employee of a security consulting firm visited a Holiday Inn Express and Hilton Garden Inn where Onity Locks were installed.   The

report demonstrated that they were able to gain access to hotel rooms using the device within seconds.

35.     According to *Forbes*, Richard Kindel, a 32 year old call center employee, who was able to assemble his own hacking device using Mr. Brocious's method, commented on how easy it was to make the device: "The parts list was super simple, so I went to Radio Shack and put it together."

36.     In the same article, another hacker, who goes by the name Mr_Q, claimed that he was able to assemble a similar hacking device using readily available parts for less than $41. Mr_Q told Forbes that the device worked on the first try on five doors at a local hotel. Mr_Q also said that he was worried that the rapid and broad spread of information regarding this method would "allow almost anyone to make one of these devices and start opening doors."

37.     According to a Hotel Online article written by Todd Seiders from Petra Risk Solutions, there have been reported burglaries and thefts by use of these hacking devices in Texas. Similar instances of attempted burglaries that might have been linked to the hacking devices were also reported in Florida. Mr. Seiders concluded the article by emphasizing the need to train and notify the hotel staffs that the burglaries relating to use of these hacking devices are "spreading across the country."

38.     On August 13, 2012, Onity released a statement describing its proposed "solution" to the defects in its Lock system. This plan consisted of two options from which the customers could choose: Onity offered to either: (1) distribute, free of charge, a mechanical cap to block the DC docket that the hackers utilize to plug in the hacking

device or (2) provide an upgrade of the firmware of the locks, with shipping, handling and labor costs in addition to some "nominal fees" to be borne by its affected customers. For the Onity Locks that do not have upgradable control boards, customers were offered "special pricing programs" to purchase a newer model lock.   However, Onity replaced the August 13, 2012 statement with the following statement:   "Onity places the highest priority on the safety and security its products provide.   Working directly with our customers we have developed, and started to deploy improvements for our locks."

39.     Any applicable statutes of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts as alleged herein.   Defendant has kept Plaintiffs and the Class in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.   Defendant is and was under a continuing duty to disclose the true character, quality, and nature of its locks to Plaintiffs and the Class.   Because of its concealment of the true character, quality and nature of its locks, Defendant is estopped from relying on any statute of limitations defense.

40.     Plaintiffs U.S. Hotel and RMH contracted with Onity for, purchased from Onity, and/or installed at least 3,955 Onity Locks for 26 lodging properties.   The overwhelming majority of these properties (23 of 26 properties) purchased and installed Onity Locks that were defectively designed as described herein.

41.     Plaintiffs' purchases of Onity Locks are reflected in the following chart:

| Lock Model | Hotel | City | State | # Locks |
|---|---|---|---|---|
| HT24 | Grand Lake Lodge | Grand Lake | CO | 78 |
| HT24 | Club House Inn | Topeka | KS | 127 |
| HT24 | Marina Inn | Sioux City | NE | 209 |
| HT24 | Best Western Ramkota | Bismarck | ND | 336 |
| HT24 | Radisson Hotel | Bismarck | ND | 235 |
| Advance | Club House Inn | Pierre | SD | 108 |
| HT24 | Best Western Ramkota | Aberdeen | SD | 210 |
| HT24 | Blue Bell Lodge | Custer State Park | SD | 29 |
| HT24 | Legion Lake Lodge | Custer State Park | SD | 25 |
| Advance | Lodge at Deadwood | Deadwood | SD | 220 |
| HT24 | State Game Lodge | Custer State Park | SD | 110 |
| HT24 | Club House Inn | Sioux Falls | SD | 134 |
| HT24 | Rock Crest Lodge | Custer State Park | SD | 36 |
| HT24 | Best Western Ramkota | Pierre | SD | 128 |
| HT24 | Sylvan Lake Lodge | Custer State Park | SD | 67 |
| HT24 | Best Western Ramkota | Sioux Falls | SD | 211 |
| HT24 | Best Western Ramkota | Watertown | SD | 102 |
| HT24 | Club House Inn | Chicago | IL | 141 |
| HT24 | Bridges Bay Resort | Okoboji | IA | 105 |

| Lock Model | Hotel | City | State | # Locks |
|---|---|---|---|---|
| HT24 | Arrowwood Resort | Okoboji | IA | 150 |
| HT24 | Park Place Hotel | Traverse City | MI | 145 |
| Advance | Best Western Plus | Bloomington | MN | 235 |
| HT24 | Hilton Garden Inn | Mankato | MN | 152 |
| HT24 | Crowne Plaza | Plymouth | MN | 277 |
| HT24 | Club House Inn | Albuquerque | NM | 151 |
| HT24 | Best Western | Casper | WY | 234 |
| | **Total** | | | **3,955** |

42.    After news of the Onity Locks' vulnerabilities were exposed in the media, representatives of Onity visited with representatives of Plaintiffs in October 2012 regarding the defects in the locks and Onity's "fix" program.  Plaintiffs and Defendant discussed the presence of defective locks at each of Plaintiffs' properties.

43.    Onity informed Plaintiffs of the two remedies it was making available – the free mechanical cap "fix" and the replacement circuit boards that Plaintiffs would have to pay for.  Onity informed Plaintiffs the replacement circuit boards would cost $11 per lock for a circuit board upgrade to permanently fix the problem.  Onity offered a $6 "rebate" on the circuit board fixes for Onity Locks purchased after 2005.

44.    Plaintiffs opted to purchase replacement circuit boards for its affected Onity Locks, but also to immediately obtain the mechanical cap fix as an interim stopgap remedy until the circuit boards could be installed.

45. The defects in Defendants' Onity Locks were latent and incapable of detection by Plaintiffs. Thus, Plaintiffs were unaware of any defect in their Onity Locks prior to the hacking issue being reported in a trade journal in 2012.

## CLASS ACTION ALLEGATIONS

46. Pursuant to Rules 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action against Defendant on behalf of themselves and all others similarly situated. The Class is defined as follows:

> All entities in the United States that own the following Onity Locks: HT28 Smart Lock, HT24 Lock, HT RFID, Advanced RFID, Advanced Lock, CodePro, Integra 5 Locking System, and Onity Wireless Lock

47. Excluded from the Class are directors and officers of the Defendant or its affiliates, as well as those individuals with a present loss of property claim from the failure of one of Defendant's products.

48. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

49. The members of the Class are so numerous that joinder of all members would be impracticable. It is estimated that Onity has sold hundreds of thousands of these defective locks in the United States. The precise numbers of members can be ascertained through discovery, which will include Defendant's sales, warranty service, and other records.

50. There are common questions of law and fact that predominate over any questions affecting only individual members of the Class. For example, Onity has unilaterally published notice since the hacking method was publicly known, addressed to

the owners of all affected Onity Locks, offering an upgrade or "fix" upon request. Onity's actions demonstrate the substantial identity of all putative class members as litigants herein.   Among the common legal and factual questions common to the class are:

a.   Whether Onity Locks are susceptible to the hacking device;

b.   Whether Defendant expressly warranted that its products were the  "most advanced" and "most reliable" in the industry;

c.   Whether Defendant expressly warranted that it would "fix" Onity Locks or "replace with a new one" for "any" defects;

d.   Whether Defendant offered any other express warranties of its products;

e.   Whether Defendant breached any express warranties;

f.   Whether Defendant impliedly warranted that its products were of merchantable quality and fit for their ordinary purpose;

g.   Whether Onity Locks failed to conform to the promises or affirmations of fact made on their label;

h.   Whether Defendant breached the implied warranty of merchantability;

i.   Whether Defendant was unjustly enriched by its conduct and retention of benefits conferred upon it by Plaintiffs and the Class; and

j.   Whether, as a result of Defendant's misconduct, Plaintiffs and the Class are entitled to damages, restitution, equitable relief and other relief, and the amount and nature of such relief.

51.     Plaintiffs' claims are typical of the claims of the Class Members.  Plaintiffs and all Class Members have been injured by the same wrongful practices of Defendant. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class Members and are based on the same legal theories.

52.     Plaintiffs will fully and adequately assert and protect the interests of the Class, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests contrary to or conflicting with the Class.

53.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member in most cases are too small to warrant the expense of individual suits.  Even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues.  In addition, Defendant has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or

corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

54. Plaintiffs do not anticipate any difficulty in the management of this litigation. Any potential difficulties can be easily managed through sub-classing or other methods.

## COUNT I – BREACH OF EXPRESS WARRANTY

55. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein and further allege as follows.

56. Defendant is a merchant as defined by applicable U.C.C. provisions and sold Onity Locks directly and indirectly to Plaintiffs and the Class.

57. Defendant expressly warranted that its Onity Locks were free from defects at the time of delivery.

58. Defendant expressly warranted that its products have "the most reliable technology."

59. Defendant expressly warranted that it provides "the most advanced electronic locking systems in the industry today."

60. Defendant expressly warranted that if "any" of the products fail to work for "any" reason, it would either "fix the problem" or "replace it with a new one." There is no time limitation on this statement.

61. Defendant expressly warranted that the purchasers of its Onity Locks would receive "guaranteed replacement and repair of system components."

62.     These express warranties proclaiming advanced technology, reliability, and a guarantee to fix or repair any problems were a part of the basis of the bargain for Plaintiffs and the Class in purchasing the Onity Locks.

63.     Defendant breached these warranties.  Onity Locks were not "the most reliable" and "the most advanced" products in the industry as Defendant proclaimed.  In fact, Defendant's Onity Locks were defective and failed to protect from even the simplest hacking tool easily assembled by following instructions posted on the internet.

64.     Additionally, Defendant has breached its promises to "fix the problem" or "replace it with a new one" and has refused to offer an acceptable cure.  The "solutions" offered by Defendant are wholly inconsistent with its warranties.  The first option of blocking the DC docket with a mechanical cap will diminish the value of the lock and cause burden to Plaintiffs.  The lock would have to be disassembled every time one needs to use the docket for ordinary purposes, including for emergency access to a guestroom.  Moreover, physical cover-up does not "fix" the fundamental defect in the Lock system; it only makes it slightly more difficult for the hackers to hack in.  The second option, which requires the customers to pay for the replacement of a defective product, does not amount to a "fix" or "replace" as promised; it is equal to *selling* a new product to defect victims.

65.     Any contractual language contained in Onity's express warranty that attempts to limit remedies or the period within which to bring claims is unconscionable, fails to conform to the requirements for limiting remedies under applicable law, causes the warranties to fail of their essential purpose, and is, thus, unconscionable and void.  Defendants knew, or should have known, that their Onity Locks were at all times

defective and easily compromised, including at the time Defendants contracted with Plaintiffs and the Class.

66.     Any language in Onity's warranty that may purport to exclude the exact types of defect that affects Plaintiffs' and the Class Members' Onity products is unilaterally imposed in a contract of adhesion that is typically provided after the sale, and is therefore unconscionable and causes the entire warranty to fail of its essential purpose.

67.     Defendant has been put on notice of the breach of express warranties by Plaintiffs and the Class through notice provided by Plaintiffs and the Class prior to the filing of this Complaint, as described herein.  Moreover, Defendant has been on notice at least since July 23, 2012 due to the wide press coverage on this issue.

68.     Plaintiffs and the Class are in privity of contract with Defendant as direct purchasers, recipients of express warranties, and/or third party beneficiaries. In addition, Plaintiffs and their agents have entered into written contracts with Defendant for the purchase and/or repair of Onity Locks.

69.     As a direct and proximate result of Defendant's breaches of its express warranties, Plaintiffs and the Class have suffered damages – an economic loss equal to the total purchase price of these unfit products, as well as monies spent and to be spent to fix or alleviate the defect.

## COUNT II – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

70.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein and further allege as follows.

71.     Defendant is a merchant as defined by applicable U.C.C. provisions and sold Onity Locks directly and indirectly to Plaintiffs and the Class.

72.     Defendant impliedly warranted to Plaintiffs and the Class that Onity Locks were fit for the ordinary purpose of locking doors and preventing unauthorized openings.

73.     Defendant breached the implied warranty of merchantability because Onity Locks are incapable of preventing unauthorized openings.  As discussed above in detail, Onity Locks lack even the basic protective measures and can be compromised by a simple hacking device, allowing unauthorized intruders to enter at will.

74.     Defendant's Onity Locks failed to conform to the promises or affirmations of fact made on their label.

75.     Plaintiffs and the Class are in privity of contract with Defendant as direct purchasers, recipients of express warranties, and/or third party beneficiaries.  In addition, Plaintiffs and their agents have entered into written contracts with Defendant for the purchase and/or repair of Onity Locks.

76.     Any language Onity has attempted to include in any contract with Plaintiffs and the Class that attempts to limit the availability of implied warranties, remedies or the period within which to bring warranty claims is unconscionable, fails to conform to the requirements for limiting remedies under applicable law, causes the warranties to fail of their essential purpose, and is, thus, unconscionable and void.  Defendants knew, or should have known, that their Onity Locks were at all times defective and easily compromised, including at the time Defendants contracted with Plaintiffs and the Class.

76.     As a direct and proximate result of Defendant's breach of implied warranty, Plaintiffs and the Class have suffered damages, including an economic loss equal to the total purchase price of these unfit products, as well as monies spent and to be spent to fix or alleviate the defect.

## COUNT III - VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301 *ET SEQ.*

77.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein and further allege as follows.

78.     The Magnuson-Moss Consumer Products Warranties Act, 15 U.S.C.§§ 2301, *et seq.*, provides a private right of action by purchasers of consumer products against manufacturers or retailers who, *inter alia*, fail to comply with the terms of an express or implied warranty.   15 U.S.C. § 2310(d)(1).   As demonstrated above, Defendant has failed to comply with the terms of its express and implied warranties with regard to the defective Onity Locks it has sold.

79.     Onity Locks are consumer products as that term is defined in § 2301(1) of the Magnuson-Moss Act.

80.     Plaintiffs and the members of the Class are consumers, as that term is defined in § 2301(3) of the Magnuson-Moss Act.

81.     Defendant is a warrantor, as that term is defined in § 2301(5) of the Magnuson-Moss Act.   Defendant offered express and implied warranties on its products that put Defendant in privity with the Plaintiffs and the Class.   In addition, Plaintiffs and

their agents have entered into written contracts with Defendant for the purchase and/or repair of Onity Locks.

82.     Plaintiffs and members of the Class notified Defendant of its breach of express warranties prior to the filing of this Complaint, including through attempting to obtain fixes for the defect from Defendant. Moreover, Defendant has been on notice at least since July 2012 due to the wide press coverage on this issue.

83.     Defendant was given a reasonable opportunity to cure its failure to comply with express and implied warranties. However, Defendant's "cures" were inadequate and did not address the defect and injuries complained of herein, either because they did not fix the problem or because Defendant required its customers to pay for them.

84.     As a direct and proximate result of Defendant's breaches of the Magnuson-Moss Act, Plaintiffs and the Class have suffered damages, including economic loss equal to the total purchase price of these unfit products, as well as monies spent and to be spent to fix or alleviate the defects.

## COUNT IV - UNJUST ENRICHMENT

85.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein and further allege as follows.

86.     As described herein, Defendant sold electronic door locks which were designed so poorly that they were defective and easily picked with a simple hacking device. Defendant sold these Onity Locks to customers who relied on the expensive locks to maintain the safety of their lodging patrons. Defendant knew, or should have

known, that its Onity Locks were at all times easily compromised and essentially worthless.

87.     Defendant's misconduct caused Plaintiffs and the Class to purchase Onity Locks to maintain the safety of lodging guests and their property without knowing the locks could be easily picked.

88.     The money paid by Plaintiffs and the Class to Defendant for Onity Locks and for fixes for the locks' defects conferred substantial benefits upon Defendant. Defendant wrongfully accepted and retained these benefits.

89.     Under the circumstances described in this Complaint, it would be inequitable and unjust for the Defendant to retain the benefits conferred upon by Plaintiffs and the Class.  Defendant should return any ill-gotten gains to Plaintiffs and the Class.

90.     Plaintiffs and the Class are entitled to receive equitable relief in the form of appropriate restitution and disgorgement of all wrongfully obtained earnings, profits, compensation and benefits obtained by Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief against Defendant as follows:

a. For an order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the Class;

b.  For restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of purchase;

c.  For actual damages for injuries suffered by Plaintiffs and the Class;

d.  For an order requiring Defendant to immediately cease its wrongful conduct as set forth above; ordering Defendant to engage in a corrective notice campaign; and requiring Defendant to implement a full, comparable, replacement and/or refund program of all Onity Locks;

e.  For reasonable attorneys' fees and the costs of this action;

f.  For prejudgment and post-judgment interest as provided by law; and

g.  For such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand trial by jury on all issues raised in this Complaint which are triable by jury.

**ZIMMERMAN REED, PLLP**

Date: June 19, 2013

s/ Brian C. Gudmundson
Brian C. Gudmundson MN 336695
J. Gordon Rudd, Jr. MN 222082
Brian C. Gudmundson MN 336695
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612.341.0400
Facsimile: 612.341.0844
Email: brian.gudmundson@zimmreed.com
Email: gordon.rudd@zimmreed.com

*Attorneys for Plaintiffs and the Proposed Class*

23