UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. Hotel and Resort Management, Inc., *et al.*, | Civil No. 13-1499 (SRN/FLN) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| Onity, Inc., | |
| Defendant. | |

Brian C. Gudmundson, and J. Gordon Rudd, Jr., Zimmerman Reed, PLLP, 1100 IDS Center, 80 South Eighth St., Minneapolis, MN 55402; James J. Pizzirusso, and Swathi Bojedla, Hausfeld LLP, 1700 K Street NW, Suite 650, Washington, DC 2006; Joseph P. Guglielmo, and Hal D. Cunningham, Scott+Scott, Attorneys at Law, LLP, The Chrysler Building, 405 Lexington Ave., 40th Floor, New York, NY 10174, for Plaintiffs.

Cooper S. Ashley, and Michael C. McCarthy, Maslon Edelman Borman & Brand, LLP, 3300 Wells Fargo Center, 90 South Seventh St., Minneapolis, MN 55402; Scott L. Winkelman, Clifford J. Zatz, and Rebecca Baden Chaney, Crowell & Moring LLP, 1001 Pennsylvania Ave. NW, Washington, DC 20004, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Onity, Inc.'s Motion to Dismiss (Doc. No. 46). For the reasons stated below, this Court grants the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs U.S. Hotel and Resort Management, Inc., Regency Hotel Management, LLC, Motiram Corporation (d/b/a Days Inn, Forest, MS), Kishor Desai, Saibaba International, LLC, Baba International, LLC, Sai Nath Krupa Investments, Inc., C&R Associates, Inc., and Sai Ram of Pensacola, Inc., own and operate hotels throughout the

United States. (Doc. No. 43, ¶¶ 13-23.) Plaintiffs purchased and installed in their hotels one or both of two particular models of locks manufactured and sold by Defendant. (Id.)

On July 24, 2012, a software engineer revealed at a security conference that these types of Onity locks "could be opened utilizing a homemade opening device, created with readily available and store-bought parts," that could "read the sitecode of an Onity Lock's memory and open the lock." (Id. ¶ 47.) The engineer described the method of breaching the lock's security as "'stupidly simple.'" (Id. ¶ 48.) After he "posted the detailed schematics for the opening device on his internet blog," others likewise exposed and publicized the problem, leading to widespread media coverage of the ability to breach the locks. (Id. ¶¶ 49-55.)

Defendant offered Plaintiffs two fixes for the problem: (1) a temporary mechanical cap that blocks access to the locks' port through which a hacker could gain access to the locks' memory, and (2) a replacement of the locks' circuit board at Plaintiffs' expense. (Id. ¶¶ 5-7, 56-62.) Plaintiffs claim neither fix is satisfactory. (Id. ¶¶ 8, 58-60.) Plaintiffs allege that Defendant has refused, however, to replace the locks or provide any other compensation. (Id. ¶ 63.) Plaintiffs further allege that each "took action to attempt to remedy" the problem. (Id. ¶ 65.)

Plaintiffs thus allege that certain models of Defendant's locks that were installed in their hotels "currently suffer from critical defects that allow the locks to be readily opened" by unauthorized persons. (Id. ¶ 1.) "The locks are ineffective and unfit to perform the basic security function for which they were designed and warranted.

Plaintiffs' locks all have the manifested defect and have either been replaced (at Plaintiffs' expense) or must be replaced." (Id.) As Plaintiffs reiterate, "[t]he sole purpose of the Onity Locks is to securely lock rooms and thereby protect the occupants and their possessions." (Id. ¶ 29.) Plaintiffs propose a nationwide class consisting of "[a]ll entities" owning either of the two Onity locks in question "who have not already received complete repair or replacement of those Locks at Onity's full expense." (Id. ¶ 99.)

Plaintiffs' Consolidated Class Action Complaint asserts four claims: (1) a claim for breach of express warranty; (2) a claim for breach of an implied warranty of merchantability; (3) a claim under the Magnuson-Moss Warranty Act; and (4) a claim for unjust enrichment. (Id. ¶¶ 112-51.) For the three warranty claims, Plaintiffs allege that they have "suffered damages – an economic loss equal to the total purchase price of these unfit products, as well as monies and labor spent and to be spent to fix or alleviate the defect." (Id. ¶ 128; accord id. ¶¶ 136, 145.) For their unjust enrichment claim, Plaintiffs allege they are entitled to "equitable relief in the form of appropriate restitution and disgorgement of all wrongfully obtained earnings, profits, compensation and benefits obtained by Defendant." (Id. ¶ 151.)

Pursuant to Rule 12, Defendant now seeks dismissal on several grounds, contending that Plaintiffs lack standing to bring this action and that, even if they would have standing, the Complaint fails to state a claim on which relief may be granted. (Doc. No. 46.)

## II.     DISCUSSION

Because standing is a jurisdictional prerequisite, the Court is obligated to address first Defendant's argument that Plaintiffs' Complaint fails to adequately allege that they have suffered an injury in fact that could satisfy the "case or controversy" requirement of Article III.

### A.     Dismissal Standard

Here, on a motion to dismiss under Rule 12, Plaintiffs bear the burden of pleading standing the same as they bear the burden on any other matter on which they bear "'the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'"  Indigo LR LLC v. Advanced Ins. Brokerage of America Inc., 717 F.3d 630, 633 (8th Cir. 2013) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992)).  At the pleading stage, the Court accepts as true the factual allegations of the Complaint and draws all reasonable inferences in Plaintiffs' favor, but does not defer to any legal conclusions or formulaic recitations of the claims' elements.  Minneapolis Firefighter Relief Ass'n v. MEMC Electronic Materials, Inc., 641 F.3d 1023, 1027 (8th Cir. 2011).  Thus, on a motion to dismiss for lack of standing, this Court accepts as true the factual allegations in the Complaint regarding standing.  E.g. Galaria v. Nationwide Mut. Ins. Co., ___ F. Supp. 2d ___, 2014 WL 689703, *3 (S.D. Ohio Feb. 10, 2014) ("[T]he inquiry is whether Plaintiffs have adequately pleaded facts which, if true, plausibly establish standing.").

**B.    Standing**

As the Supreme Court recently reiterated in <u>Clapper v. Amnesty Int'l, USA</u>, standing involves three components, and if the alleged injury is "imminent" rather than "actual," any such future injury must be "certainly impending" to satisfy Article III:

> To establish Article III standing, an injury must be [1] "concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling." "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes–that the injury is *certainly* impending." Thus, we have repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are not sufficient.

___ U.S. ___, 133 S. Ct. 1138, 1147 (2013) (emphases in <u>Clapper</u>) (internal citations omitted).  Moreover, the Court also reiterated its reluctance to conclude that a future injury is "certainly impending" when its actual occurrence is contingent upon the decisions or actions of third parties.  <u>Id.</u> at 1150.

Here, the general thrust of Plaintiffs' standing argument is that the alleged defect has caused an actual, present injury or an injury is certainly impending.[1]  But even

---

[1]    The parties address various related concepts that sometimes overlap:  (1) product defect, either inherent or as "manifested," (2) injury, particularly actionable injury resulting in damages, and (3) injury in fact for purposes of standing under Article III. Plaintiffs assert that "[e]ach Onity Lock was rendered useless . . . due to an inherent defect present at the time of purchase–a defect . . . that made the Locks easily susceptible to being bypassed.  While any product might break down over time, Plaintiffs and Class Members reasonably expected that the Lock itself would not contain an inherent defect off the assembly line."  (Doc. No. 43, ¶ 64.)  The concepts of defect and whether that defect has manifested itself to cause damages so as to support an actionable injury are relevant to the issue of liability under the substantive law of products liability.  Here, for purposes of the present motion and the antecedent jurisdictional issue of standing, the

(continued...)

assuming that the lock mechanism is presently defective for purposes of products liability law–despite the fact that it still performs the functions of locking the door upon closing it and unlocking it upon insertion of a properly-coded key card–no present injury has occurred, other than the costs Plaintiffs have incurred to remedy the defect. And Plaintiffs have not plausibly alleged that any unauthorized access of their hotel rooms is truly "imminent." Finally, in any event, such access would be the result only of a third-party intruder's decision to gain access *via* the publicized means.

> 1. **Plaintiffs' Present "Injury" Is Confined To The Costs Of Preventing Future Unauthorized Access and Their Alleged Future Injury Is Neither Certainly Impending Nor Fairly Traceable To Defendant's Actions**

Plaintiffs argue that they have alleged that they "suffered present injuries based on the fact that *their locks* contain a present, manifest design defect that renders the products unable to serve their ordinary purpose of providing security." (Doc. No. 52, at 2 (emphasis in original).) But the fact that every lock in each of Plaintiffs' hotels suffers from this "defect" does not mean they have suffered an actual, present injury in fact for purposes of standing. Granted, the Complaint alleges that the locks may be readily bypassed by those with the intent and tools to do so. But there are no allegations that the locks are presently not operational.

---

[1](...continued)
Court accepts as true the allegation that all of the locks contained this purported defect. But whether a defect exists is not necessarily the same issue as whether Plaintiffs have adequately alleged injury in fact for purposes of standing. See 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3531, at 2 (3d ed. 2008) (explaining that when addressing standing, "[t]he focus is on the party, not the claim itself").

Nevertheless, Plaintiffs contend that "it is not necessary that [they] be burglarized before the defect in Defendant's lock is manifest and actionable." (Id. at 10.) Rather, Plaintiffs argue they have standing because they "assert economic injuries arising from a manufacturer's delivery of an inherently defective product or failure to honor its warranties." (Id.; accord id. at 12 ("[T]hey were injured because the locks were incapable of performing their most basic function: stopping an intruder who wished to access a room without permission.").) But the only concrete actual damages they can identify as a present injury are confined to the costs they have incurred to remedy the "defect" in order to prevent the future injury of a third party's unauthorized access.

The ultimate injury upon which Plaintiffs premise their Complaint is, of course, that of actual unauthorized entry into their hotel rooms in the future. But that risk does not present any "certainly impending" injury, much less one that would be fairly traceable to Onity. Granted, the problem with the lock models in question was widely publicized, such that it may fairly be assumed that many individuals learned how to bypass the security system. But the fact that the means to exploit the defect was widely disseminated does not warrant the inference that future unauthorized access is certainly impending. While it is possible that a potential intruder would in fact attempt to gain entry, "'[a]llegations of *possible* future injury' are not sufficient." Clapper, 133 S. Ct. at 1147 (emphasis in original).

And where the alleged future injury does not satisfy the "clearly impending" standard, the fact that a plaintiff incurs present costs to safeguard against the merely

possible future injury does not amount to any present injury in fact. In Clapper, the Supreme Court rejected the Second Circuit's standard–that plaintiffs can show standing by asserting that they suffer present costs and burdens that are based on a fear of surveillance, so long as that fear is not "'fanciful, paranoid, or otherwise unreasonable'"–because such a standard "improperly waters down the fundamental requirements of" standing. 133 S. Ct. at 1151. "In other words, [plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." Id. Where plaintiffs "do not face a threat of certainly impending [injury], the costs they have incurred to avoid [injury] are simply the product of their fear of [that injury]" and the Court's "decision in Laird makes it clear that such a fear is insufficient to create standing." Id. at 1152.

Finally, the fact remains that no such unauthorized entry could occur unless and until that third-party acted with criminal intent to gain entry. But where the future injury is contingent upon the actions of another, the Supreme Court has declined "to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors" not before the court. Id. at 1150 (explaining that standing usually may not be premised on "guesswork as to how independent decisionmakers will exercise their judgment").[2]

---

[2] In Clapper, the Court recognized that it previously had employed various phrasings of the standard governing the likelihood of future injury and clarified that the correct standard is that a future injury must be "certainly impending." The Court acknowledged that its "cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, we have

(continued...)

In sum, it would appear that the Court could conclude, based on Clapper alone, that Plaintiffs have incurred no present injury other than the costs they have imposed on themselves, which is not an adequate injury in fact to establish standing, and that their purported future injury–an actual unauthorized entry–is too speculative and attenuated to satisfy the "certainly impending" standard of "imminence," largely because it could occur only if third parties engaged in criminal conduct to enter Plaintiffs' hotel rooms.

### 2. The "Lost Data" Analogy

But the Court need not rely solely on Clapper, which addressed the apprehension of anticipated government surveillance, rather than the fear that a product defect could allow third parties to gain unauthorized access to hotel rooms. The parties focus largely on a line of product liability cases–running from the Eighth Circuit's decisions in Briehl v. General Motors Corp., 172 F.3d 623 (8th Cir. 1999), O'Neil v. Simplicity, Inc., 574 F.3d 501 (8th Cir. 2009), and In re Zurn Pex Plumbing Products Liability Lit. 644 F.3d 604 (8th Cir. 2011), through several decisions from the District of Minnesota, Thunander v. Uponor, Inc., 887 F. Supp. 2d 850 (D. Minn. 2012), and George v. Uponor Corp., ___ F. Supp. 2d ___, 2013 WL 6801219 (D. Minn. Dec. 23, 2013)–addressing the "no injury"

---

²(...continued)
found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." 133 S. Ct. at 1150 n.5. But the Court then stated that even if that standard is relevant and distinct from the "clearly impending" standard, the plaintiffs would still fail to meet it "in light of the attenuated chain of inferences necessary to find harm here." Id. And in "pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm," plaintiffs "cannot rely on speculation about" unfettered choices made by independent actors not before the court. Id. Here, too, even under a "substantial risk" standard, unauthorized entry requires the decisions and actions of third parties.

doctrine in the more conventional context of defects in, for example, vehicles, cribs and residential plumbing systems.[3]  The Court acknowledges that this line of authority is instructive here and, in fact, the decisions are not inconsistent with this Court's ruling.

But the Court finds that the most analogous line of authority is that addressing breaches of computer or data security (the "lost data" cases).  In such cases, individual plaintiffs–much like Plaintiffs here, who allege that inadequate security in Defendant's locks has caused them damages in the form of the costs of taking measures to prevent future unauthorized third-party access–allege that unauthorized access by a third-party (be they computer hackers or thieves of physical property such as laptops or hard drives) to the plaintiffs' confidential data results in damages in the form of costs incurred to protect against future injury, *e.g.*, to monitor their credit, etc.[4]

---

[3] In general, this line of authority adheres to the rule that "[c]ourts have been particularly vigilant in requiring allegations of injury or damages in products liability cases." Briehl v. General Motors Corp., 172 F.3d 623, 627 (8th Cir. 1999).  Thus, where "a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies," and a complaint is properly dismissed where the plaintiffs "have failed to allege any manifest defect and their vehicles perform in a satisfactory manner." Id. at 628.  And in O'Neil v. Simplicity, Inc., the court followed the Briehl rule that a plaintiff has no claim "'where the alleged defect has not manifested itself in the product they own.'"  574 F.3d 501, 503 (8th Cir. 2009) (explaining that allegations that the defect could manifest itself, but not that it has done so in the particular product that plaintiffs purchased, is an omission that "is fatal to their case").

[4] Granted, Plaintiffs here are not individuals who are at risk of losing personal confidential data due to Defendant's inadequate security (Plaintiffs' hotel guests being those that are at risk of the analogous future injury of having their rooms entered by unauthorized third parties).  Nevertheless, Plaintiffs are responsible for preventing unauthorized access that could injure their guests.  Moreover, Plaintiffs here, like those whose confidential data was compromised, are seeking damages for taking present precautions in anticipation of the risk of future injury.

In the "lost data" context, where the courts have split somewhat on the question of standing, it now appears that a majority of the courts to have addressed the "lost data" issue hold that plaintiffs whose confidential data has been exposed, or possibly exposed, by theft or a breach of an inadequate computer security system, but who have not yet had their identity stolen or their data otherwise actually abused, lack standing to sue the party who failed to protect their data.  E.g. Reilly v. Ceridian Corp., 664 F.3d 38, 43 (3rd Cir. 2011) ("Most courts have held that such plaintiffs lack standing because the harm is too speculative.  We agree with the holdings in those cases.").  Accord Galaria v. Nationwide Mut. Ins. Co., ___ F. Supp. 2d ___, 2014 WL 689703, *5, *7 (S.D. Ohio Feb. 10, 2014) (citing Clapper for application of the "certainly impending standard" in the "lost data" context, summarizing the decisions both finding and denying standing, and disagreeing with those cases that ruled "that the mere increased risk of theft or fraud is a sufficiently concrete injury in fact to confer standing").[5]

In Reilly, although a computer hacker had infiltrated a database containing the plaintiffs' confidential information, it was "not known whether the hacker read, copied, or understood the data."  664 F.3d at 40.  The court ruled, even before the Supreme Court's

---

[5] The "lost data" cases involve a variety of factual scenarios, both in terms of the nature of the breach (for example, the theft of a laptop, or the hacking of a computer system's security) and the extent of the intrusion (ranging from hardware stolen by a thief who might not even be interested in the confidential data contained therein, to the data being accessed but the particular plaintiff's information not yet being misused).  But insofar as each involved some type of actual breach, the present case is arguably easier to decide because Plaintiffs are not premising their standing on any actual breaches of the Onity locks in question, but rather seek damages only for the costs of preventing future unauthorized access.

11

decision in Clapper–which did not announce any new rule of standing, but rather reiterated its prior exacting standard for cases of future harm–that "[a]llegations of 'possible future injury' are not sufficient," because a merely "'threatened injury must be 'certainly impending,' and proceed with a high degree of immediacy." Id. at 42 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S. Ct. 2130 (1992); Whitmore v. Arkansas, 495 U.S. 149, 110 S. Ct. 1717 (1990)).  The court further observed that the alleged injuries were "even more speculative than those at issue in *Lujan*," insofar as the Reilly plaintiffs' "alleged increased risk is even more attenuated, because it is dependent on entirely speculative, future actions of an unknown party." Id.  The court also rejected the costs the plaintiffs had incurred as a basis for any present injury sufficient to support standing.  Id. at 46 ("[C]osts incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury' which forms the basis for [the plaintiffs'] claims.").

Similarly, in Galaria v. Nationwide Mut. Ins. Co., thieves hacked into the defendant's computer network and stole the plaintiffs' personal data, although neither named plaintiff alleged that their data had been misused or their identities stolen as a result.  2014 WL 689703, at *1.  Having the benefit of the Supreme Court's reiteration in Clapper of the "certainly impending" standard for imminence, the court surveyed the body of "lost data" cases and agreed with Reilly and the numerous other cases that have concluded that the possibility of future injury presented in such cases does not support standing.  Id. at *6-*7 (and expressly disagreeing with those courts that have found

standing because (1) they were decided prior to Clapper's reiteration of the "certainly impending" standard, (2) the risk of harm in "lost data" cases is distinguishable from that in medical monitoring cases, and (3) "the occurrence of such future injury rests on the criminal actions of independent decisionmakers"). The court also applied Clapper to reject the costs that the plaintiffs already had incurred as a basis to support present injury. Id. at *8.[6]

Here, too, the threat of unauthorized access is not "certainly impending," and in the wake of Clapper there is no basis to apply a less exacting standard in this context any more than there is in the "lost data" context. This Court holds that Plaintiffs, who have experienced no present injury other than the costs they incurred in response to the possibility that the security of their hotel rooms might be breached in the future, presently lack standing under the "certainly impending" standard, particularly in light of the fact that no such breach could occur unless and until a third party succeeds in gaining unauthorized access.

### 3. The Products Liability Cases On Which Plaintiffs Rely Do Not Support Their Standing Argument

Plaintiffs contend that the "fundamental flaw" in Defendant's argument "is its premise that Plaintiffs will not have sufficient injury to satisfy Article III standing until

---

[6] There is some contrary authority, based on the Seventh Circuit's decision in Pisciotta v. Old Nat'l Bancorp., 499 F.3d 629 (7th Cir. 2007), but the future-injury standard it applied–derived from the environmental toxin and medical injury contexts–is not appropriate in this context, even assuming it remains viable after the Supreme Court clarified in Clapper that such injury must be "certainly impending" to satisfy Article III. Reilly v. Ceridian Corp., 664 F.3d 38, 44 (3rd Cir. 2011); Galaria, ___ F. Supp. 2d at ___, 2014 WL 689703, at *6-*7.

*after* Plaintiffs suffer a burglary because of the defect inherent in the Onity locks." (Doc. No. 52, at 9 (emphasis in original).) But the particular cases on which Plaintiffs rely, <u>In re Zurn Pex Plumbing Products Liability Lit.</u>, 644 F.3d 604 (8th Cir. 2011), and <u>Cole v. General Motors Corp.</u>, 484 F.3d 717 (5th Cir. 2007), do not support their assertion here of standing based on a present actual injury.

Plaintiffs argue that it is not necessary that they first be burglarized before they have standing because in <u>Zurn Pex</u> the court stated that "a product defect *need not* have caused 'external damage.'" (Doc. No. 52, at 10 (emphasis in original).) But the court's reference to "external damage" as not being necessary does not equate with Plaintiffs' suggestion that they have standing even though their hotel rooms have not yet been burglarized. The product at issue in <u>Zurn Pex</u> was a residential plumbing system that, as the plaintiffs there alleged, was "'doomed to leak within warranty'" because the particular form of corrosion at issue there "inevitably begins to affect [the fittings] upon their installation and exposure to water," such that "the fitting eventually begins to leak." 644 F.3d at 609. Although the proposed class included both "dry plaintiffs," those who had not yet experienced leaks, as well as those who already had incurred leakage–"Some of the homeowner plumbing systems have leaked, but others have not"–the Eighth Circuit ruled that because all of the systems began to fail essentially upon installation,[7] the dry plaintiffs had standing even though their systems "need not have already caused external

---

[7] One expert opined that "his experiments showed that 'rapid [corrosion] would occur' in" the system at issue, as the failure process "'starts as soon as they are exposed to domestic water,'" while another expert "calculated that 99% of homes would experience a leak in at least one of the fittings within 25 years." <u>Id.</u> at 609-10.

14

damage." Id. at 617. In short, the dry plaintiffs were presently experiencing internal damage to their plumbing systems that sufficed to support standing without the corrosion having progressed to the point where it caused leaks. They thus were not typical "no injury plaintiffs" because they did not argue that the "fittings merely 'risk' developing" corrosion, but rather alleged that the corrosion "afflicts all of the fittings upon use." Id.

Here, in contrast, the locks do not begin to fail on their own upon installation, nor are they all "doomed to fail" eventually. Rather, the doors successfully lock upon closing and open when accessed by an authorized key card. And, in fact, no unauthorized entry is bound to occur in *any* of the Plaintiffs' properties–unless and until a third party succeeds in exploiting the defect.

Nor does Cole help Plaintiffs' argument, that is, that they have standing because they "assert economic injuries arising from a manufacturer's delivery of an inherently defective product or failure to honor its warranties." (Doc. No. 52, at 10.) There, the court found standing for vehicle purchasers who brought suit against the manufacturer that had installed defective side impact sensing modules for airbags, but who had themselves not experienced any inadvertent deployment. 484 F.3d at 718-19. The court distinguished the situation where the plaintiffs "did not assert economic harm emanating from anything other than potential physical harm" to themselves, but merely the harm actually incurred by others. In Cole, however, "although plaintiffs do not assert physical injuries (either their own or those of other persons), they do assert their own actual economic injuries" in the form of the decreased value of the car upon purchase. Id. at

15

723. "Plaintiffs seek recovery for their actual economic harm . . . emanating from the loss of their benefit of the bargain." Id.

Here, however, there is no distinction between a group of those hotels that have incurred injury already and a group that merely fears potential future injury, as none of Plaintiffs have suffered any actual present harm insofar as the locks still function. Moreover, the defect has not caused any present economic loss comparable to the decreased resale value addressed in Cole. Rather, any costs Plaintiffs already have incurred is due to their anticipation of *future* injury, which could occur only if and when a third party circumvents the locks. And the Supreme Court in Clapper clearly ruled that such costs do not suffice to establish standing.

### C.  Conclusion

On the particular facts alleged here, the Court concludes that Plaintiffs lack standing, and thus that this Court lacks jurisdiction. Accordingly, the Court does not reach the remaining issues presented by the parties, which address the merits of the substantive claims. E.g. Reilly, 664 F.3d at 39.

## III.  ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss [Doc. No. 46] is **GRANTED**; and
2. Plaintiffs' Consolidated Class Action Complaint is **DISMISSED WITH PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:   July 30, 2014                                     s/ Susan Richard Nelson
                                                          SUSAN RICHARD NELSON
                                                          United States District Judge